1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MARK LEEROY LYON,

9

                        Plaintiff,

10

     v.

11

F/V ENDURANCE, et al.,

12

                    Defendants.

Case No. C11-1204-BAT

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT**

13

     Plaintiff, Mark LeeRoy Lyon, has filed claims in admiralty for seaman's injury; failure to

14

pay maintenance, cure, and unearned wages; breach of contract; and foreclosure of maritime lien.

15

Dkt. 1.  He names as defendants F/V Endurance, O.N. 276678, Her Engines, Machinery,

16

Appurtenances, Etc., *in rem*, and John Liddicoat and Liddicoat Fisheries, Inc., *in personam*.  His

17

claims arise from his July 2009 injury while working on board the Endurance, which is owned

18

and operated by John Liddicoat and Liddicoat Fisheries (collectively, "Liddicoat").  Liddicoat

19

moves for summary judgment, asserting that Mr. Lyon's execution of a release of claims in

20

exchange for monetary consideration bars his claims.  Dkt. 10.  Having reviewed the papers filed

21

in support of and in opposition to the motion, and having concluded that the matter is appropriate

22

for determination without oral argument, the Court **GRANTS** the defendants' motion and

23

**DISMISSES** this case with prejudice.

# I.     BACKGROUND

### A.     Mr. Lyon's injuries and treatment

On July 20, 2009, Mr. Lyon was injured while operating the seine skiff for the Endurance. His left leg became entangled in a tow line and Mr. Lyon was pulled into the tow bit, breaking his left ankle and fibula and causing a tear in his left meniscus.  Dkt. 11 (Agent Decl.), ex. 1 at 1-2.  Orthopedic surgeon Ronald Woo, M.D., treated Mr. Lyon's injuries.  *Id.*  Dr. Woo initially provided conservative treatment, including leg braces and a walker.  *Id.*  After Mr. Lyon's injuries failed to heal with conservative treatment, Dr. Woo performed surgery on April 14, 2010, to fix the fractured fibula and repair the meniscus tear.  *Id.* at 3.  Two weeks later, on April 26, 2010, Dr. Woo noted that Mr. Lyon had a stable gait and good range of motion and he walked without supports.  *Id.*  Dr. Woo discussed a return to work on approximately July 15, 2010, three months post-operation.  *Id.*  Dr. Woo performed another follow-up exam on May 13, 2010, where he noted that Mr. Lyon may have some discomfort as his fibula lengthened slightly back to normal length, but this would likely resolve.  *Id.* at 5-6.

### B.     Settlement negotiations

Rachel Agent, an employee of the Purse Seine Vessel Owners Association, administered Mr. Lyon's claims on behalf of Liddicoat.  Agent Decl. at 1-2.  She was responsible for authorizing recommended medical treatment, reimbursing Mr. Lyon for out-of-pocket medical expenses, and paying Mr. Lyon's maintenance, cure, and unearned wages.  *Id.* at 2.  She paid Mr. Lyon maintenance in the amount of $6,380, cure in the amount of $24,146.87, and unearned wages in the amount of $23,461.07.  *Id.*

Ms. Agent provides the following account of the settlement negotiations with Mr. Lyon:  On May 20, 2010, Ms. Agent spoke by telephone with Mr. Lyon.  *Id.*  They discussed settling his

1   claims, and Mr. Lyon stated he would come see Ms. Agent in person to discuss settlement in the

2   next two weeks.  *Id.*

3        On June 14, 2010, Ms. Agent again spoke by telephone with Mr. Lyon.  *Id.* at 3.  Mr. Lyon

4   stated he wanted to settle his claims.  *Id.*  Ms. Agent offered him $35,000 in new money in

5   exchange for a full and final settlement and release, including any claim for future maintenance

6   and cure.  *Id.*  Mr. Lyon made a counter-offer agreeing to $35,000 in new money but requesting

7   an agreement for Liddicoat to pay any future medical bills related to the incident.  *Id.*  Ms. Agent

8   responded to the counter-offer by agreeing to $35,000 in new money and to pay Mr. Lyon's

9   medical bills for an additional six months, through December 31, 2010.  *Id.*  Mr. Lyon agreed to

10  these settlement terms.  *Id.*

11       Mr. Lyon informed Ms. Agent during this phone conversation that he was in jail and could

12  not come to the office to sign the release.  *Id.* at 4.  He stated that his father could come to the

13  office to pick up the release and deliver it to the jail for his signature.  *Id.*  Ms. Agent agreed to

14  this proposal.  *Id.*  Mr. Lyon instructed her to give the settlement check to his father once he had

15  delivered the signed release.  *Id.*  Ms. Agent advised Mr. Lyon to read the release carefully and

16  to call her if he had any questions.  *Id.*

17       The following day, June 15, 2010, Mr. Lyon's father, Lee Roy Lyon, came to Ms. Agent's

18  office and picked up the release form.  *Id.*  Later that day, Lee Roy Lyon returned with the

19  executed release.  *Id.*  Ms. Agent gave the settlement check made payable to Mark Lyon to Lee

20  Roy Lyon.  *Id.*  On June 16, 2010, the check was presented for payment with a signature reading

21  "Mark Lyon" on the back.  *Id.*

22       Mr. Lyon continued to communicate with Ms. Agent through mid-September 2010, seeking

23  reimbursement for physical therapy treatment and out-of-pocket expenses, which Ms. Agent

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

1  authorized per the terms of the settlement agreement.  *Id.*  Mr. Lyon did not raise any objections

2  to the settlement or claim that he had never received the settlement funds.  *Id.* at 5.  Ms. Agent

3  had no further communications with Mr. Lyon.  *Id.*

4      Mr. Lyon provides the following account of the settlement negotiations:  At some point, Ms.

5  Agent told Mr. Lyon she had a settlement for him for $35,000 and made it sound like a "very

6  generous" settlement.  Dkt. 16 (Lyon Decl.) at 6.  A day or so before he was to meet with her to

7  sign the papers, he was jailed for driving with a suspended license.  *Id.*  Lee Roy Lyon called Ms.

8  Agent to tell her Mr. Lyon would not be able to meet with her.  *Id.*  Lee Roy Lyon agreed to take

9  the settlement paperwork Ms. Agent provided to Mr. Lyon in jail.  Dkt. 17 (Lee Roy Lyon Decl.)

10  at 2.

11      In jail, a guard brought Mr. Lyon to a small room to sign the papers.  Lyon Decl. at 6.  Mr.

12  Lyon did not have his glasses and so could not read the document; he cannot read or understand

13  very well even with his glasses.  *Id.* at 5-6.  He filled out the blanks as best he could and handed

14  the papers back to the guard.  *Id.* at 6.  He thought he had to sign in order to get a payment on his

15  claim but "had no idea about [his] rights as an injured fisherman or what would normally be fair

16  for injuries and disability like what has happened to me."  *Id.*

17      The guard brought the papers back to Lee Roy Lyon, who took them to Ms. Agent.  Lee Roy

18  Lyon Decl. at 2.  Ms. Agent gave Lee Roy Lyon the settlement check, which Lee Roy Lyon

19  deposited into his account.  *Id.*

20      Mark Lyon denies that he spoke to Ms. Agent while he was in jail or that he gave her

21  permission to turn the settlement check over to his father.  Lyon Decl. at 8.  Mr. Lyon denies that

22  he signed his name on the back of the check or ever saw the check.  *Id.* at 7.  He avers that he did

23  not receive the settlement money and has not been able to find out what his father did with the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

1  money.[1]  *Id.*  Mr. Lyon feels that he "made a bad deal by agreeing to a cut-off of [his] medical

2  care way too early and accepted way too little."  *Id.* at 6.

3  **C.   The release**

4  The release provides, in pertinent part:

5  **RELEASE AND SETTLEMENT OF CLAIM**

6  For the sole consideration of <u>THIRTY-FIVE THOUSAND DOLLARS ($35,000), I,</u>
<u>MARK LYON</u> (hereinafter "Releasor"), do hereby release, and forever discharge

7  <u>JOHN LIDDICOAT, LIDDICOAT FISHERIES, INC., AND THE FV</u>
<u>ENDURANCE</u> (hereinafter "Releasees"), and all other persons, firms, or

8  corporations from any and all claims, demands, rights, actions, or causes of action on
account of or in any way growing out of any and all personal injuries (and

9  consequences thereof, including death and traumatic brain injury, and specifically
including, also, any injuries which may exist, but which at this time are unknown

10  and unanticipated and which may develop at some time in the future, and all
unforeseen developments arising from known injuries) resulting from or to result

11  from an accident that occurred on or about July 20, 2009, in which Releasor
somehow injured his left leg and left knee aboard the FV Endurance, while Releasor

12  was in the service of the FV Endurance.

13  This Release includes all claims for additional maintenance, unearned wages or any
other remedies under the Jones Act or general maritime law.

14
15  With regard to future medical expenses (cure) related to the July 20, 2009 incident,
Releasees will agree to pay said expenses from the date the Release is signed
through December 31, 2010.  The Releasor shall be solely responsible for all

16  medical expenses after December 31, 2010.

17  Agent Decl. Ex. 2 at 1.

18  The release also required Mr. Lyon to answer several questions.  Under the statement "I

19  certify that I have read and fully understand the terms of this Release.  TO BE FILLED IN BY

20  <u>MARK LYON</u> IN HIS OWN HANDWRITING," Mr. Lyon answered "Yes" to the question

21  "Have you read this paper from beginning to end?"  *Id.* at 2.  He answered "Yes" to the question

22  "Do you know what this paper is that you are signing?"  He answered the question "What is this

23

---

[1] Lee Roy Lyon passed away in late 2011. Dkt. 14 at 15.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

paper you are signing?" with "Release of everything," which mirrored the instruction to "Write here: Release of everything."[2]  *Id.*  He answered "Yes" to the question "Do you fully understand the meaning and effect of all the terms of the Release?"  *Id.*

The release concluded with the statement "Therefore, I am signing my name above the words: THIS IS A RELEASE OF ALL CLAIMS to show that I mean everything that is written in this release or document."  *Id.*  Mr. Lyon signed above the statement described in the previous sentence, dating the document June 15, 2010, at Bellevue, Washington.  *Id.*

## II.        ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is not appropriate if a material issue of fact exists for trial.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the opposing party must then show a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.

### B.    Seamen's releases of personal injury claims

Because seamen are "wards of the admiralty," a court evaluates the validity of a seaman's release of personal injury claims "under principles of admiralty law analogous to the duty owed by a fiduciary to a beneficiary, not solely under principles of contract law."  *Orsini v. O/S*

---

[2] This answer also includes Mr. Lyon's handwritten and circled initials where his written answer to the question exceeded the space provided to write it.

1  *SEABROOKE O.N.*, 247 F.3d 953, 958-59 (9th Cir. 2001) (citing *Garrett v. Moore-McCormack*

2  *Co.*, 317 U.S. 239, 247 (1942)).  A seaman's release of personal injury claims is valid and

3  enforceable if: (1) the seaman executed the release freely, without deception or coercion; and (2)

4  the seaman made the release with a full understanding of his rights.  *Orsini*, 247 F.3d at 959.  In

5  evaluating the second prong, the court must consider (i) the adequacy of the consideration; (ii)

6  the nature of the medical advice available to the seaman at the time of signing the release; and

7  (iii) the nature of the legal advice available to the seaman at the time of signing the release.  *Id.*

8  A vessel owner who obtains a seaman's release bears the burden of showing its validity.

9  *Garrett*, 317 U.S. at 248.

10      *1.     Freely executed*

11      Mr. Lyon focuses his argument on whether he fully understood his rights and does not

12  specifically allege that he did not freely execute the release or that he was coerced into signing

13  the release or deceived about its terms.  Nevertheless, the Court has considered this prong of the

14  test and concludes that Mr. Lyon freely executed the release and was not coerced or deceived.

15      In *Orsini*, where the court found elements of coercion, the seaman was presented with the

16  release while on board the ship, the crew pressured him to sign by urging that it would be unfair

17  to make others pick up his slack because he could not work, and he had no place to stay in the

18  remote Alaskan village where the ship was located at the time the release was presented and he

19  was not made aware of his right to payment for the flight home.  *Orsini*, 247 F.3d at 959-60.

20  This situation is a far cry from Mr. Lyon's settlement negotiations with Ms. Agent and

21  subsequent signing of the release.

22      Ms. Agent and Mr. Lyon first spoke by phone about settling his claims nearly one year after

23  the injury occurred and almost one month before Mr. Lyon ultimately signed the release.  Mr.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

1   Lyon negotiated more favorable terms in the release.  The terms of the written release were the

2   same as those discussed in the June 14, 2010 phone conversation.  And Ms. Agent told Mr. Lyon

3   to call her if he had any questions about the release.  These facts show Mr. Lyon was not coerced

4   or pressured to sign the release or deceived in its terms.

5           Certain facts surrounding Mr. Lyon's execution of the release require further scrutiny.  Mr.

6   Lyon was in jail when he signed the release, and a jail guard brought him to a room to sign the

7   papers and supervised him while he signed them.  However, neither Ms. Agent nor Liddicoat

8   created these conditions; Mr. Agent merely facilitated Mr. Lyon's proposal for signing the

9   release while in jail.  The fact that Mr. Lyon signed the release under the supervision of a jail

10  guard does not by itself establish the type of coercion that would undermine the release.  Mr.

11  Lyon was not pressured to sign or deceived in the release's terms.  The Court finds that the first

12  prong of the enforceability test is met.

13      2.    *Full understanding*

14          Mr. Lyon asserts that he did not have a full understanding of his rights because the amount

15  of consideration involved, even if he had received it, was on its face inadequate given the nature

16  and extent of his injuries, he did not have any medical advice as to his prognosis at the time he

17  was presented with the release, and he did not have any legal advice at the time he was presented

18  with the release.  Dkt. 14 at 14.

19      i.    *Adequacy of consideration*

20          Mr. Lyon asserts that the consideration provided for in the release, $35,000 and payment of

21  medical expenses for approximately six months beyond the date of the release, was on its face

22  inadequate given nature and extent of his injuries.  Dkt. 14 at 14.  But beyond his bald assertion

23  that the amount is facially inadequate, Mr. Lyon presents no facts to support this claim.  In

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

1  *Orsini*, the court found that the consideration Mr. Orsini received may have been less than the

2  amount he was entitled to absent the release.  *Orsini*, 247 F.3d at 961-62.  The court concluded

3  that this was inadequate (if not grossly inadequate) consideration.  *Id.* at 962.  Mr. Lyon presents

4  no facts showing a similar inadequacy here.  For example, there is no evidence before the Court

5  of the nature or cost of any additional medical treatment Mr. Lyon may have received after

6  Liddicoat's obligation to pay medical expenses ended, or the nature or cost of any additional

7  medical treatment Ms. Lyon claims he now needs.  In short, Mr. Lyon has presented no facts

8  showing he received less consideration than he was entitled to absent the release, or to support

9  his contention that the consideration was in any way patently inadequate.  The $35,000 of

10  monetary consideration Mr. Lyon received was almost $5,000 more than the total amount of

11  maintenance and cure he received.  The Court has considered the nature and extent of Mr.

12  Lyon's injuries and concludes that the release provided for adequate consideration.

13       Mr. Lyon also argues that Liddicoat failed to deliver the consideration to him and that by

14  delivering the check to Lee Roy Lyon, they "assumed the risk" that he would not receive the

15  funds.  Dkt. 14 at 15.  He essentially argues that he did not receive the monetary consideration

16  provided for in the release and therefore the release cannot stand.  But it is undisputed that

17  Liddicoat, through Ms. Agent, issued the check for the settlement funds and paid for the

18  additional medical care Mr. Lyon received through December 31, 2010.  Mr. Lyon never

19  informed Ms. Agent that he did not receive the check or the settlement money or inquire about

20  the settlement money in any way, even though he continued to communicate with her for three

21  months after he signed the release.  While the parties dispute the facts surrounding Mr. Lyon's

22  receipt of the settlement funds, the Court finds that under the circumstances present here, this

23  issue is not material to the question of the validity of Mr. Lyon's release.  The Court concludes

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

1    that Liddicoat fully performed under the terms of the release and there is no basis for invalidating

2    the release on these grounds.

3        ii.    *Medical advice*

4        Mr. Lyon argues that he lacked "any understanding as to the extent of his injuries or the

5    disability resulting from those injuries" at the time he executed the release.  However, he again

6    presents no facts to support his claim.  In *Orsini*, the Court found that Mr. Orsini did not fully

7    understand the extent of his injuries because he was initially misdiagnosed and did not

8    understand the true nature of his injury at the time he executed the release.  *Orsini*, 247 F.3d at

9    962-63.  The court also noted that a seaman would not have a sufficient understanding of the

10   nature of his injuries if the defendant advised the seaman that his injuries were less serious than

11   the defendant knew them to be or gave him unsound or improper advice about the injuries.  *Id.* at

12   963.  Mr. Lyon does not argue that he was misdiagnosed or that he had any injuries that were

13   unknown at the time of the release.  He does not allege that Liddicoat, Ms. Agent, or Dr. Woo

14   hid the seriousness of his injuries or gave him unsound or improper advice about his injuries.

15   Moreover, he does not provide any facts to show what additional medical advice he should have

16   received.  Other than a vague statement that he did not know he "would still need medical care to

17   get back to where [he] was before the accident," Lyon Decl. at 6, he does not provide any

18   information about his current prognosis or what additional treatment he allegedly needs.

19       The facts show that Dr. Woo diagnosed a broken ankle and fibula and torn meniscus, he

20   performed surgery to repair these injuries after they did not heal with conservative treatment,

21   and, two weeks after the operation, he discussed with Mr. Lyon a return to work three months

22   post-operation.  Mr. Lyon executed the release approximately a year after the injury, two months

23   after the surgery, and a month and a half after Dr. Woo discussed with him his ability to return to

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10

1   work three months after the surgery.  Mr. Lyon does not present any facts to support his claim

2   that he did not have a full picture of his medical situation at the time of the release.

3       *iii.*    *Legal advice*

4       Mr. Lyon argues that he did not have sufficient legal advice at the time he signed the release

5   because he did not consult with counsel about his claims and because Liddicoat failed to ensure

6   he had an understanding of his rights and remedies and the consequences of signing the release.

7   Dkt. 14 at 14.  It is undisputed that Mr. Lyon was not represented by a lawyer at the time he

8   signed the release.  Where a seaman is unrepresented, the vessel's owner or agent must advise

9   him of his undisputed legal rights and possible causes of action.  *Orsini*, 247 F.3d at 964.  This

10  includes a fair discussion of his right to maintenance, cure and wages, and of his right to sue for

11  damages under the Jones Act.  *Id.*  But this does not include the obligation to provide a seaman

12  with a lawyer or give him an evaluation of the merits of his claim.  *Id.*

13      At the time Mr. Lyon signed the release, he had already received payments for maintenance,

14  cure, and unearned wages.  This creates a strong inference that Mr. Lyon understood his

15  entitlement to these payments.  And when Ms. Agent proposed a settlement that ended

16  Liddicoat's obligation to pay for medical care as of the date of the release, Mr. Lyon negotiated

17  with Ms. Agent over continued payments for medical care.  Mr. Lyon's ability to bargain for

18  additional payment of his medical expenses is another powerful indicator that he understood

19  what he was giving up by signing the release.

20      Although Mr. Lyon did not have counsel when he signed the release, Liddicoat was not

21  required to provide counsel for him.  Moreover, nearly a month passed between the time Ms.

22  Lyon initially broached the subject of settlement and the date Mr. Lyon executed the release,

23  leaving him sufficient time to consult an attorney had he chosen to do so.  Mr. Lyon states that

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 11

1    no one explained to him the risk that he would need medical care beyond the term covered by the

2    release or that he would need to be retrained for a different occupation.  Lyon Decl. at 6.  But

3    Ms. Agent was not required to provide an evaluation of the merits of his claim, which would

4    include an evaluation of these very risks.  In addition, Ms. Agent told Mr. Lyon to read the

5    release carefully and call her if he had any questions about it.  Mr. Lyon did not contact Ms.

6    Agent with any questions about the release, either before or after signing it.  This also leads to an

7    inference that he understood the release and did not have questions about it.

8         The language of the release itself provides additional support for a finding that Mr. Lyon

9    understood his rights and the nature of the release.  The release states that it releases "all claims,

10   demands, rights, actions, or causes of action," including "all claims for additional maintenance,

11   unearned wages or any other remedies under the Jones Act or general maritime law."  Agent

12   Decl. ex. 2 at 1.  It further states that Liddicoat will pay for medical expenses (cure) through

13   December 31, 2010, and that Lyon is responsible for all medical expenses after December 31,

14   2010.  *Id.*  The release then provides, "I certify that I have read and fully understand the terms of

15   this Release," followed by Mr. Lyon's handwritten answers affirming that he read the paper from

16   beginning to end, he knew what the paper was that he was signing, the paper he was signing was

17   a "release of everything," and he fully understood the meaning and effect of all the terms of the

18   release.  *Id.* at 2.  Mr. Lyon then signed and dated the release above the words "THIS IS A

19   RELEASE OF ALL CLAIMS" to "show that I mean everything that is written in this release or

20   document."  *Id.*  Although Mr. Lyon claims he was unable to read or understand the release, his

21   ability to appropriately answer the questions shows otherwise.  The Court is satisfied that Mr.

22   Lyon had sufficient understanding of his legal rights at the time he signed the release.

23

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12

### III.     CONCLUSION

Mr. Lyon feels that he made a bad deal.  Lyon Decl. at 6.  Even with the Court's solicitous view of a seaman's release of claims, the fact that Mr. Lyon now regrets the settlement agreement he made is not sufficient to set aside a valid and binding release.  The Court is satisfied that Mr. Lyon executed the release freely, without deception or coercion, and with a full understanding of his rights.  Because the Court finds that Mr. Lyon's release of all claims against Liddicoat was valid and binding, the Court finds that Liddicoat is entitled to summary judgment. The defendants' motion is therefore **GRANTED** and this case is **DISMISSED** with prejudice.

DATED this 7th day of August, 2012.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge